UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GEORGE M. BODZIONY,  HIDAJET KANACEVIC,
OMER BOCI, ROBERT C. DONNELLY,
SEAD SKRETOVIC, SULEYMAN KUCUR,
and ZECIR HASANDEKIC,

                       Case No.

           Plaintiffs,

       -vs.-

                             **COMPLAINT**
WOLFGANG'S STEAKHOUSE INC., WOLF EASTSIDE     **with JURY DEMAND**
LLC d/b/a WOLFGANG'S STEAKHOUSE, ZMF
RESTAURANTS LLC d/b/a WOLFGANG'S
STEAKHOUSE AT PARK AVENUE, WOLF GOTHAM
LLC d/b/a WOLFGANG'S STEAKHOUSE - GOTHAM
HOTEL, WOLF ON BROADWAY LLC d/b/a
WOLFGANG'S STEAKHOUSE, WOLF AT TRIBECA
INC. d/b/a WOLFGANG'S STEAKHOUSE TRIBECA,
PETER ZWEINER, WOLFGANG ZWEINER,

             Defendants.
-------------------------------------------------------------------X

     Plaintiffs, GEORGE M. BODZIONY, HIDAJET KANACEVIC, OMER BOCI,

ROBERT C. DONNELLY, SEAD SKRETOVIC,  SULEYMAN KUCUR, and ZECIR

HASANDEKIC, by and through their attorneys, the LAW OFFICES OF WILLIAM

CAFARO, complaining of the Defendants, hereby alleges as follows:

### *NATURE OF CASE*

    1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29

U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants damages

for: (1) failing to pay minimum and overtime wages; (2) unlawfully retaining gratuities, (3)

liquidated damages, (4) attorneys' fees and costs; and (5) any other Federal claims that can

be inferred from the facts set forth herein.

    2.    Plaintiffs further alleges that, pursuant to the New York Labor Law ("NYLL")

they are entitled to recover from Defendants: (1) unpaid minimum and overtime wages; (2)

unlawfully retained gratuities, (3) unpaid spread of hours wages; (4) statutory penalties, (5) liquidated damages, (6) attorneys' fees and costs; and (7) any other New York State claims that can be inferred from the facts set forth herein.

### *THE PARTIES*

3.      Plaintiff GEORGE M. BODZIONY, (hereinafter "Mr. Bodziony") is an individual residing in Beaufort County, South Carolina.

4.      Plaintiff HIDAJET KANACEVIC, (hereinafter "Mr. Kanacevic") is an individual residing in Richmond County, New York

5.      Plaintiff OMER BOCI, (hereinafter "Mr. Boci,") is an individual residing in Richmond County, New York.

6.      Plaintiff ROBERT C. DONNELLY, (hereinafter "Mr. Donnelly") is an individual residing in Nassau County, New York.

7.      Plaintiff SEAD SKRETOVIC, (hereinafter "Mr. Skretovic") is an individual residing in Queens County, New York

8.      Plaintiff SULEYMAN KUCUR, (hereinafter "Mr. Kucur") is an individual residing in Queens County, New York

9.      Plaintiff ZECIR HASANDEKIC, (hereinafter "Mr. Hasandekic") is an individual residing in Kings County, New York.

10.     Upon information and belief, Defendant WOLFGANG'S STEAKHOUSE INC. is a domestic corporation organized under the laws of the State of New York with a principal place of business located at 409 Greenwich Street, New York, NY 10013.

11.     Upon information and belief, Defendant WOLFGANG'S STEAKHOUSE INC. had gross receipts of not less than $500,000.00. in each of the years 2016 – 2020, inclusive.

12.     Upon information and belief, Defendant WOLF EASTSIDE LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 200 E 54th Street, New York, NY 10022.

13.     Upon information and belief, Defendant WOLF EASTSIDE LLC had gross receipts of not less than $500,000.00. in each of the years 2016 – 2020, inclusive.

14.     Upon information and belief, Defendant ZMF RESTAURANTS LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 4 Park Avenue, New York, NY 10016.

15.     Upon information and belief, Defendant ZMF RESTAURANTS LLC had gross receipts of not less than $500,000.00. in each of the years 2016 – 2020, inclusive.

16.     Upon information and belief, Defendant WOLF GOTHAM LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 16 E 46th Street, New York, NY 10017.

17.     Upon information and belief, Defendant WOLF GOTHAM LLC had gross receipts of not less than $500,000.00. in each of the years 2016 – 2020, inclusive.

18.     Upon information and belief, Defendant WOLF ON BROADWAY LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 250 W 41st Street, New York, NY 10036.

19.     Upon information and belief, Defendant WOLF ON BROADWAY LLC had gross receipts of not less than $500,000.00. in each of the years 2016 – 2020, inclusive.

3

20.     Upon information and belief, WOLF AT TRlBECA, INC. is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 409 Greenwich Street, New York, NY 10013.

21.     Upon information and belief, Defendant WOLF AT TRlBECA, INC had gross receipts of not less than $500,000.00. in each of the years 2016 – 2020, inclusive.

22.     Each of the entity defendants above are owned and operate a restaurant under the tradename "Wolfgang's Steakhouse," through their respective corporate forms.

23.     Upon information and belief, Defendant PETER ZWEINER is an individual, whose actual place of business is located at 409 Greenwich Street, New York, NY 10013.

24.     PETER ZWEINER is an owner and principal of the Entity Defendants.

25.     PETER ZWEINER exercised control over the terms and conditions of Plaintiffs' employment.

26.     PETER ZWEINER had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of Plaintiffs' employment

27.     At all times, employees could complain to PETER ZWEINER regarding any of the terms of their employment, and PETER ZWEINER would have the authority to effect any changes to the quality and terms of Plaintiffs' employment.

28.     PETER ZWEINER ensured that employees effectively serve customers and that the business is operating efficiently and profitably. PETER ZWEINER exercised functional control over the business and financial operations of the Corporate Defendant

29.     PETER ZWEINER had the power and authority to supervise and control Plaintiffs' supervisors and could reprimand employees.

30.     Upon information and belief, at all times herein pertinent, Defendant PETER ZWEINER, served as a principal, officer and/or manager of each of the entity defendants in this action.

31.     Upon information and belief, Defendant WOLFGANG ZWEINER is an individual, whose actual place of business is located at 409 Greenwich Street, New York, NY 10013.

32.     WOLFGANG ZWEINER is an owner and principal of the Entity Defendants.

33.     WOLFGANG ZWEINER exercised control over the terms and conditions of Plaintiffs' employment.

34.     WOLFGANG ZWEINER had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of Plaintiffs' employment

35.     At all times, employees could complain to WOLFGANG ZWEINER regarding any of the terms of their employment, and WOLFGANG ZWEINER would have the authority to effect any changes to the quality and terms of Plaintiffs' employment.

5

36.     WOLFGANG ZWEINER ensured that employees effectively serve customers and that the business is operating efficiently and profitably. WOLFGANG ZWEINER exercised functional control over the business and financial operations of the Corporate Defendant.

37.     WOLFGANG ZWEINER had the power and authority to supervise and control Plaintiffs' supervisors and could reprimand employees.

38.     Upon information and belief, at all times herein pertinent, Defendant WOLFGANG ZWEINER, served as a principal, officer and/or manager of each of the entity defendants in this action.

### *JURISDICTION AND VENUE*

39.     Jurisdiction is based upon 28 U.S.C. § 1331, insofar as it involves a statute of the United States, specifically, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Plaintiff relies upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to the state law claims which form another basis for recovery upon the same factual nexus, specifically Articles 6 & 19 of the Labor Law and related New York State Department of Labor regulations.

40.     Venue is based upon 28 U.S.C. § 1391(b)(1), insofar as at least one of the Defendants resides within this Judicial District, and (b)(2), insofar as a substantial part of the events giving rise to the within causes of action occurred in this Judicial District.

### *PROCEDURAL HISTORY*

41.     On or about August 28, 2018, a complaint was filed against the defendants in this action  alleging Defendants violated the FLSA and NYLL styled *Delijanin on behalf of himself, FLSA Collective Plaintiffs and the Class, vs. Wolfgang's Steakhouse Inc.; SDNY Case No.: 18-cv-7854* ("Class Action")

42.     On or about June 23, 2020, the District Court preliminarily certified the Class Action and ordered that Notice be sent to Class Members.

43.     After receiving the Court Ordered notice, the Plaintiffs timely opted out of the Class Action settlement.

44.     The Plaintiffs opted out of the Class Action on or about September 5, 2020.

45.     Plaintiffs' New York Labor Law statute of limitations are tolled from the filing of the Class Action to the final disposition of the Class Action.

46.     Plaintiff Kanacevic timely filed a consent to join the Class Action on July 3, 2019.

47.     Plaintiff Boci timely filed a consent to join the Class Action on January 30, 2019.

48.     Plaintiff Kucur timely filed a consent to join the Class Action on June 18, 2019.

49.     Plaintiff Hasandekic timely filed a consent to join the Class Action on July 9, 2019.

50.     Plaintiffs' FLSA statute of limitations are tolled from the filing of their consent to join the Class Action until final disposition of the Class Action.

### *FACTUAL ALLEGATIONS*

**Interrelationship Between the Entity Defendants**

51.     At all times herein pertinent, the Defendants, and each of them, were engaged in an industry having an affect on commerce within the meaning of 29 U.S.C. § 203. Specifically, Defendants own and operate numerous steakhouses in Manhattan.

52.     The Entity Defendants operate as a single integrated enterprise in that they are engaged in related activities, share common ownership, and have a common business purpose.

53.     The Entity Defendants are commonly owned and operated by the Individual Defendants in this action.

54.     The Entity Defendants have the same corporate leadership, the named Defendants herein.

55.     The Entity Defendants share a common logo that appears on their website and storefronts.

56.     The     Entity     Defendants     share     a     common     website http://vvww.wolfgangssteakhouse.net

57.     The entity Defendants advertise and market to clients together through their shared website and social media pages.

58.     The entity Defendants share the same menu.

59.     The Entity Defendants maintain centralized labor relations, human resources, payroll operations and employment policies.

60.     Upon information and belief, the entity Defendants all use the same employee manuals, and company letterhead.

Allegations concerning all Plaintiffs

61.     At all times herein pertinent, and in the course of their duties, Plaintiffs, and each of them, regularly handled products which had been moved in commerce, including, but not limited to, forks, knives, plates, various vegetables, and steak.

62.     At all times herein pertinent, and in the course of their duties, Plaintiffs, and each of them, were individually covered by the FLSA in that they routinely, on almost every shift, processed credit card payments from Defendants' customers.

63.     Plaintiffs' primary duties did not include the exercise of discretion and independent judgment with respect to any matters of significance.

64.     Plaintiffs, and each of them, were required to perform a large amount of non-tipped tasks, commonly referred to as "side work". This side work would take over 2 hours per day and/or more than 20% of their shifts. Examples of this side work, include, but is not limited to:

     a.  Make and cut butter;
     b.  Make schlag (Defendants' homemade whipped cream) using heavy cream and sugar;
     c.  Bring up linens to set tables;
     d.  Bring condiments (salt, pepper, steak sauce, horseradish, etc.) to the main floor from storage;
     e.  Clean, prepare, and fill containers for condiments;
     f.  Pre-cut all desserts;
     g.  Clean the refrigerator and freezer;
     h.  Wash and maintain coffee stations, refill station with coffee, and clean coffee maker;
     i.  Clean the espresso machine and all the cappuccino pots;
     j.  Prepare and clean the bread station;
     k.  Prepare silverware, cups, and glasses and bring them to the work stations;
     l.  Arrange tables for lunch and dinner;
     m.  Arrange tables to prepare for various reservations;
     n.  Clean and fill sugar cadies;
     o.  Make iced tea;
     p.  Make hot fudge for desserts;
     q.  Clean and maintain sundae machines; and
     r.  Sweep under tables at the end of their shifts.

65.     Plaintiffs, and each of them, were required to do a substantial amount of off the clock work.  Specifically, Plaintiffs were required to do 30-45 minutes of side work before clocking in and 30-45 minutes of side work before clocking out.

66.     Plaintiffs, and each of them, were required to share a portion of their cash tips with managers.  Specifically, while having a discussion with the closing waiter who was tallying the tips at the end of the shift, these managers would commonly say, in sum and substance, "Look how god you guys are doing, you're making more money than I am."  The managers would then take approximately $100.00 from the cash tips meant for the servers.

67.     Plaintiffs regularly worked for the Defendants in excess of forty (40) hours a week but never received an overtime premium of one and one-half times his regular rate of pay for those hours.

68.     Plaintiffs did not receive the statutory minimum wage.

69.     Plaintiffs were required to work off the clock and were not paid for this work.

70.     Plaintiffs did not receive an extra hour at the prevailing minimum wage when his daily spread of hours/split shift exceeded ten hours.

71.     Defendants failed to provide Plaintiffs with any wage statements that reflected the correct number of hours they worked, their regular rate of pay and/or their overtime rate of pay for each hour they worked in excess of forty hours in a given workweek.

72.     Defendants intentionally did not provide Plaintiffs with a wage notice at the time of their hire, or at any time thereafter, containing any of the following information: his

rates of pay and basis thereof; whether Plaintiff was paid by the hour, shift, day, week, salary, piece, commission, or other; whether any allowances were claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by Defendant; the name and physical addresses of Defendant; any "doing business as" names used by Defendant; and Defendant's mailing addresses and telephone numbers.

73.     Upon information and belief, Defendants, at the time of hire, failed to give the Plaintiffs, and each of them, a wage notice that conforms with New York law.

74.     Upon information and belief, Defendants failed to give the Plaintiffs a true and correct wage statement with every payment of wages.

75.     Defendants acted in the manner described in this Complaint so as to maximize their profits while minimizing their labor costs.

76.     Every hour that Plaintiffs, and each of them, worked was for Defendants' benefit.

Plaintiff Bodziony

77.     Plaintiff Bodziony worked for the Defendants from on or about February 2008 until on or about March 13, 2020.

78.     From the beginning of his employment until the end of 2017, Plaintiff Bodziony worked for the Defendants as a server.

11

79.     Plaintiff Bodziony's primary duties included, but were not limited to, waiting on customers and providing side work detailed above

80.     From the beginning of 2018 until the end of his employment, Plaintiff Bodziony worked for Defendants as a bartender.

81.     As a bartender Plaintiff Bodziony's primary duties included, but were not limited to, making and serving customers drinks and providing side work detailed above.

82.     Throughout his employment Plaintiff Bodziony worked the same schedule. Specifically, he worked five (5) days per week.  Two days per week, Plaintiff Bodziony worked from 4:00PM until 10:00PM.  Three days per week, Plaintiff Bodziony worked form 10:00AM until 10:30PM.

83.     From the beginning of his employment until on or about December 31, 2016, Plaintiff was paid $5.00 per hour he was allowed to clock in.

84.     In 2017, Plaintiff Bodziony was paid $7.50 per hour he was allowed to clock in.

85.     In 2018, Plaintiff Bodziony was paid $8.65 per hour he was allowed to clock in.

86.     In 2019, Plaintiff Bodziony was paid $10.00 per hour he was allowed to clock in.

87.     In 2020, Plaintiff Bodziony was paid $10.00 per hour he was allowed to clock in.


Plaintiff Kanacevic

88.     Plaintiff Kanacevic worked for the Defendants from on or about February 2012 until on or about January 1, 2018.

12

89.     Throughout his employment with the Defendants, Plaintiff Kanacevic worked as a server.

90.     Plaintiff Kanacevic's primary duties included, but were not limited to, waiting on customers and providing side work detailed above.

91.     Throughout his employment Plaintiff Kanacevic worked the same schedule. Specifically, he worked five (5) days per week.  Two days per week, Plaintiff Kanacevic worked from 10:00AM until 4:00PM.  Two days per week, Plaintiff Kanacevic worked form 10:00AM until 10:30PM. One day per week, Plaintiff Kanacevic worked from 10:00AM until 1:00AM the following morning.

92.     Throughout his employment Plaintiff Kanacevic was paid $5.00 per hour he was allowed to clock in.

93.     From the beginning of his employment until on or about December 31, 2016, Plaintiff was paid $5.00 per hour he was allowed to clock in.

94.     In 2017, Plaintiff Kanacevic was paid $7.50 per hour he was allowed to clock in.

95.     In 2018, Plaintiff Kanacevic was paid $8.65 per hour he was allowed to clock in.


Plaintiff Boci

96.     Plaintiff Boci worked for the Defendants from May 2010 until on or about January 1, 2018.

97.     Throughout his employment with the Defendants, Plaintiff Boxi worked as a server.

98.    Plaintiff Boci's primary duties included, but were not limited to, waiting on customers and providing side work detailed above.

99.    Throughout his employment Plaintiff Boci worked the same schedule. Specifically, he worked five (5) days per week.  Two days per week, Plaintiff Boci worked from 10:00AM until 4:00PM.  Two days per week, Plaintiff Boci worked form 10:00AM until 10:30PM. One day per week, Plaintiff Boci worked from 10:00AM until 1:00AM the following morning.

100.    From the beginning of his employment until on or about December 31, 2016, Plaintiff was paid $5.00 per hour he was allowed to clock in.

101.    In 2017, Plaintiff Boci was paid $7.50 per hour he was allowed to clock in.

102.    In 2018, Plaintiff Boci was paid $8.65 per hour he was allowed to clock in.


Plaintiff Donnelly

103.    Plaintiff Donnelly worked for the Defendants from on or about December 27, 2011 until on or about March 13, 2020

104.    Throughout his employment with the Defendants, Plaintiff Donnelly worked as a server.

105.    Plaintiff Donnelly's primary duties included, but were not limited to, waiting on customers and providing side work detailed above.

106.    Throughout his employment Plaintiff Donnelly worked the same schedule. Specifically, he worked five (5) days per week.  Two days per week, Plaintiff Donnelly worked from 4:00PM until 10:00PM.  Two days per week, Plaintiff Donnelly worked form 10:00AM until 10:30PM. One day per week, Plaintiff Donnelly worked from 10:00AM until 1:00AM the following morning.

107. From the beginning of his employment until on or about December 31, 2016, Plaintiff was paid $5.00 per hour he was allowed to clock in

108. In 2017, Plaintiff Donnelly was paid $7.50 per hour he was allowed to clock in

109. In 2018, Plaintiff Donnelly was paid $8.65 per hour he was allowed to clock in

110. In 2019, Plaintiff Donnelly was paid $10.00 per hour he was allowed to clock in.

111. In 2020, Plaintiff Donnelly was paid $10.00 per hour he was allowed to clock in.

Plaintiff Skretovic

112. Plaintiff Skretovic worked for the Defendants from on or about March 15, 2013 until on or about September 30, 2018.

113. Throughout his employment with the Defendants, Plaintiff Skretovic worked as a server.

114. Plaintiff Skretovic's primary duties included, but were not limited to, waiting on customers and providing side work detailed above.

115. Throughout his employment Plaintiff Skretovic worked the same schedule. Specifically, he worked five (5) days per week.  Two days per week, Plaintiff Skretovic worked from 4:00PM until 10:00PM.  Two days per week, Plaintiff Skretovic worked form 10:00AM until 10:30PM. One day per week, Plaintiff Skretovic worked from 10:00AM until 1:00AM the following morning.

116.    Throughout his employment, from June through August every year, Plaintiff Skretovic worked six days per week.  On five (5) days he worked form 10:00AM until 10:30PM. One day per week, Plaintiff Skretovic worked from 10:00AM until 1:00AM the following morning.

117.    From the beginning of his employment until on or about December 31, 2016, Plaintiff Skretovic was paid $5.00 per hour he was allowed to clock in

118.    In 2017, Plaintiff Skretovic was paid $7.50 per hour he was allowed to clock in.

119.    In 2018, Plaintiff Skretovic was paid $8.65 per hour he was allowed to clock in.


Plaintiff Kucur

120.    Plaintiff Kucur worked for the Defendants from May 2010 until on or about June 15, 2017.

121.    Throughout his employment with the Defendants, Plaintiff Kucur worked as a server.

122.    Plaintiff Kucur's primary duties included, but were not limited to, waiting on customers and providing side work detailed above

123.    Throughout his employment Plaintiff Kucur worked the same schedule. Specifically, he worked five (5) days per week.  Two days per week, Plaintiff Kucur worked from 10:00AM until 4:00PM.  Two days per week, Plaintiff Kucur worked form 10:00AM until 10:30PM. One day per week, Plaintiff Kucur worked from 10:00AM until 1:00AM the following morning.

124.    From the beginning of his employment until on or about December 31, 2016, Plaintiff Kucur was paid $5.00 per hour he was allowed to clock in

125.    In 2017, Plaintiff Kucur was paid $7.50 per hour he was allowed to clock in.

Plaintiff Hasandekic

126.    Plaintiff Hasandekic worked for the Defendants from on or about May 1, 2010 until on or about February 28, 2018.

127.    From the beginning of his employment until on or about the end of 2012, Plaintiff Hasandekic worked as a server.

128.    As a server Plaintiff Hasandekic's primary duties included, but were not limited to, waiting on customers and providing side work detailed above

129.    From the beginning of 2013 until the end of his employment, Plaintiff Hasandekic worked for Defendants as a bartender.

130.    As a bartender Plaintiff Hasandekic's primary duties included, but were not limited to, making and serving customers drinks and providing side work detailed above.

131.    Throughout his employment Plaintiff Hasandekic worked the same schedule. Specifically, he worked six (6) days per week.  Three days per week, Plaintiff Hasandekic worked from 4:00PM until 10:00PM.  Two days per week, Plaintiff Hasandekic worked form 10:00AM until 10:30PM. One day per week, Plaintiff Hasandekic worked from 10:00AM until 1:00AM the following morning.

132.    From the beginning of his employment until on or about December 31, 2016, Plaintiff was paid $5.00 per hour he was allowed to clock in.

133.    In 2017, Plaintiff Hasandekic was paid $7.50 per hour he was allowed to clock in.

134.    In 2018, Plaintiff Hasandekic was paid $10.00 per hour he was allowed to clock in.

### AS AND FOR A FIRST CAUSE OF ACTION
### FEDERAL FAIR LABOR STANDARDS ACT
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PAY MINIMUM WAGE)

135.    The Named Plaintiffs hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

136.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect the Named Plaintiffs.

137.    Defendants have failed to pay the Named Plaintiffs the proper statutory minimum wage to which they have been entitled under the FLSA.

138.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*,

139.    Defendants have failed to inform Plaintiffs of the provisions of subsection 203(m) of the FLSA.

140.    Defendants also distributed a portion of their tips to workers who do not "customarily and regularly" receive tips.

141.    Defendant also required Plaintiffs to do a substantial amount of non-tipped side work in excess of 20% of their time.   During these time periods Defendants compensated Plaintiffs at the tipped minimum wage rather than the full hourly minimum wage.

142.    Defendant also required Plaintiffs to do a substantial amount of work "off the clock" during which time they were not compensated.

143.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of the Named Plaintiffs.

144.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

145.    As a result of Defendants' violations of the FLSA, Named Plaintiffs have been deprived of the proper minimum wage compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
### FEDERAL FAIR LABOR STANDARDS ACT
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PAY OVERTIME)

146.    The Named Plaintiffs hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

147.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect the Named Plaintiffs.

148.    Defendants have failed to pay the Named Plaintiffs overtime wages to which they have been entitled under the FLSA - at a rate of 1.5 times their regular rate of pay - for all hours worked in excess of 40 per workweek.

149.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices

described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of the Named Plaintiff.

150.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

151.    As a result of Defendants' violations of the FLSA, Named Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

### *AS AND FOR A THIRD CAUSE OF ACTION*
### *NEW YORK LABOR LAW*
### *AGAINST THE DEFENDANTS, AND EACH OF THEM*
### *(FAILURE TO PAY MINIMUM WAGES)*

152.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

153.    At all times herein pertinent, Plaintiffs were employees of Defendant, and Defendant was the employer of Plaintiffs within the meaning of the New York Labor Law and the supporting New York State Department of Labor Regulation.

154.    Defendant failed to pay the Plaintiffs proper minimum wages to which they were entitled under the New York Labor Law and the supporting New York State Department of Labor Regulations.

155.    Pursuant to the NYLL, Article 19, §§ 650 *et seq*. and the supporting New York State Department of Labor Regulations, Defendant has been required to pay Plaintiffs the full minimum wage at a rate of: (a) 8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (b) 8.75 per hour for all hours worked from December 31, 2014 through December 30, 2014 through December 30, 2015; (c) $9.00 per hour for all

hours worked from December 31, 2015 through December 30, 2016; (d) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017, € $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (f) $15.00 per hour for all hours worked from December 31, 2018 through the present.

156.    Defendant failed to notify Plaintiffs of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

157.    Defendant required Plaintiffs to share gratuities with employees who are not eligible to receive tips under the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiffs are entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate at all times relevant times.

158.    Defendant required Plaintiffs to perform more than 2 hours and/or 20% of their work time performing non-tip producing side work.

159.    Defendant required Plaintiffs to perform "off the clock" during which time they were not compensated.

160.    By Defendant's failure to pay the Plaintiffs proper minimum wages for hours worked up to the first 40 hours per week, it has willfully violated the New York Labor Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

161.    Due to Defendant's violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendant their unpaid minimum wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### *AS AND FOR A FOURTH CAUSE OF ACTION*
### *NEW YORK LABOR LAW*
### *AGAINST THE DEFENDANTS, AND EACH OF THEM*
### *(FAILURE TO PAY OVERTIME WAGES)*

162.     The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

163.     At all times herein pertinent, Plaintiffs were employees of Defendant within the meaning of the New York Labor Law.

164.     Defendant is an employer of the Plaintiffs within the meaning of the New York Labor Law.

165.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant.

166.     Defendant failed to pay the Plaintiffs overtime wages to which they were entitled under the New York Labor Law.

167.     By Defendant's failure to pay Plaintiffs premium overtime wages for hours worked in excess of 40 hours per week, it has willfully violated the New York Labor Law Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

168.     Due to Defendant's violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### *AS AND FOR A FIFTH CAUSE OF ACTION*
### *NEW YORK LABOR LAW*
### *AGAINST THE DEFENDANTS, AND EACH OF THEM*
### *(FAILURE TO PAY SPREAD OF HOURS WAGES)*

169.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

170.    Defendant willfully failed to pay Plaintiff additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty - has been greater than 10 hours.

171.    Through their knowing or intentional failure to pay Plaintiffs spread-of-hours pay, Defendant willfully violated the NYLL, Article 19, § § 650 et seq., and the supporting New York State Department of Labor Regulations.

172.    Due to Defendant's violations of the NYLL, Plaintiffs are entitled to recover from Defendant its unpaid spread-of-hours wages, liquidated damages, as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

### *AS AND FOR A SIXTH CAUSE OF ACTION*
### *NEW YORK LABOR LAW*
### *AGAINST THE DEFENDANTS, AND EACH OF THEM*
### *(FAILURE TO PROVIDE WAGE NOTICES)*

173.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

174.    Upon information and belief, Defendant willfully failed to furnish the Plaintiffs with annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

175.    Due to Defendant's willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties for each work day that Defendant failed to provide Plaintiffs with proper annual wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

### AS AND FOR A SEVENTH CAUSE OF ACTION
### NEW YORK LABOR LAW
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (FAILURE TO PROVIDE WAGE STATEMENTS)

176.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

177.    Defendant failed to furnish Plaintiffs with proper statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

24

178.    Due to Defendant's willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties for each work day that Defendant failed to provide Plaintiffs with proper wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### AS AND FOR A EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (TIP MISAPPROPRIATION)

179.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

180.    At all times relevant, Plaintiffs were employees within the meaning of NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

181.    At all times relevant, Defendant was an employer of Plaintiffs within the meaning of the NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

182.    The wage payment provisions of Article 6 of the NYLL, and the supporting New York State Department of Labor Regulations, apply to Defendant, and protect Plaintiffs.

183.    Defendant unlawfully demanded or accepted, directly or indirectly, part of the gratuities and/or service charges received by Plaintiffs in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

184.    Defendant unlawfully retained part of the gratuities and/or service charges earned by Plaintiffs in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

185.    Defendant unlawfully required Plaintiffs to share part of the gratuities and/or service charges they received with non-tipped employees, including sommeliers (managers on duty),  in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor regulations.

186.    Through their knowing or intentional demand for, acceptance of, and/or retention of gratuities and/or service charges received by Plaintiffs, Defendant willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor regulations.

187.    Due to Defendant's willful violations of the NYLL, Plaintiffs are entitled to recover from Defendant the value of all misappropriated gratuities and/or service charges, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### AS AND FOR AN NINTH CAUSE OF ACTION
### NEW YORK STATE LABOR LAW
### AGAINST THE DEFENDANTS, AND EACH OF THEM
### (UNLAWFUL DEDUCTIONS FROM WAGES)

188.    The Named Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

189.    Defendants have made unlawful deductions from the Plaintiffs' wages, including, but not limited to, deducting a portion of Plaintiffs' tips.

190.    The deductions made from the Plaintiffs' wages have not been expressly authorized in writing by Plaintiffs and have not been for the benefit of the Plaintiffs.

191.    Through their knowing or intentional efforts to permit unauthorized deductions from the Plaintiffs' wages Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

192.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants the amounts of all unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## JURY DEMAND

193.    Plaintiff demands a trial by jury as to all issues so triable

## PRAYER FOR RELIEF

**WHEREFORE**, the Named Plaintiffs, pray for relief as follows:

A.    Unpaid minimum wage compensation, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting US Department of Labor Regulations;

B.    Unpaid overtime compensation, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting US Department of Labor Regulations;

C.    Issuance of a declaratory judgment that the practices complained of in this are unlawful under the NYLL, Article 6 §§ 190 *et seq.*, NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

D.      Unpaid minimum wage compensation and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

E.      Unpaid overtime compensation and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Unpaid spread of hours compensation and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

G.      Misappropriated tips and/or service charges and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

H.      Unlawful deductions and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

I.      Statutory penalties of fifty dollars for each work day that Defendants failed to provide Named Plaintiff with proper annual wage notices, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

J.      Statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Named Plaintiff with proper wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

K.      Prejudgment and post-judgment interest;

L.      An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

M.      Reasonable attorneys' fees and costs of the action; and

28

N.    Such other and further relief, in law or equity, as this Court may deem

appropriate

Dated:  New York, New York
        September 28, 2020

                 Respectfully submitted,
                 LAW OFFICES OF WILLIAM CAFARO

                 _____
                 William Cafaro, Esq. (WC 2730)
                 *Attorneys for Plaintiffs*
                 108 West 39th Street, Suite 602
                 New York, New York 10018
                 (212) 583-7400
                 BCafaro@CafaroEsq.com